# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

Direct Dial: (212) 763-0883
Direct Email: bwhite@kaplanhecker.com

November 5, 2020

**By ECF & E-mail**

The Honorable Katherine Polk Failla
United States District Court
for the Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re:   *Sines et al. v. Yiannopoulos*, No. 20-mc-00241 (KPF)

Dear Judge Failla:

We write on behalf of Movants in the above-captioned action in response to the Court's order of October 14, 2020 denying without prejudice Movants' motion to compel Respondent Milo Yiannopoulos to comply with a subpoena issued in *Sines v. Kessler*, No. 17-cv-00072 (W.D. Va.). *See* Dkt. No. 24. In particular, in the October 14th Order, the Court concluded that Movants had established the first two prongs of the three part test a party must meet to overcome the qualified journalist's privilege. Specifically, the Court concluded that Movants had sufficiently shown that the content Movants seek through this action "is highly material and relevant," and is "necessary or critical to the maintenance of the claim." *Id.* at 15–16. The Court nevertheless concluded, however, that Movants had "not yet established" the third element, *i.e.*, "that the identity of Respondent's confidential source is unobtainable from other sources." *Id.* at 17.

In light of that finding, the Court concluded that:

> Movants must provide a "clear and specific" statement showing that they have pursued alternative sources—*i.e.*, sources other than Respondent or information provided by Respondent—to ascertain the identity of the person with the relevant recordings. At a minimum, Movants have not ruled out that they may be able to identify the source because the source was one of a limited number of attendees of Rally planning meetings, and is therefore presumably a name already known to Movants. Therefore, Movants' motion to compel is denied without prejudice, with leave to renew upon a more thorough demonstration that Movants have exhausted potential alternative sources.

*Id.* at 18; *see also id.* at 18 n.4 (concluding that Movants "must a provide a record that explains their efforts to investigate this issue").

Movants appreciate the opportunity to demonstrate for the court the extensive efforts they have undertaken to acquire the precise type of information they seek through the present motion: recordings of in-person planning meetings for the Unite the Right event (or their source). As to be demonstrated below, Movants have gone to extraordinary lengths to pursue that information, which Respondent has represented is (or, at least, was) in his possession (or the possession of his source(s)). For example, and as discussed in further detail below, Movants have used nearly every document discovery tool available to them—they've served significant numbers of requests for documents, deposed more than thirty individuals (defendants and non-parties), issued nearly one hundred subpoenas, and filed more than twenty discovery-related motions. Bloch Decl. ¶ 2. To be clear, nearly each of these efforts included an attempt to resolve the central question to which Respondent (or his source(s)) can apparently shed unique light: what was discussed at certain in-person planning sessions for the Unite the Right rally. Respondent claimed he (or his source(s)) possessed a set of recordings of in-person planning sessions that Richard Spencer attended, at least one of which took place in Charlottesville in the days leading up to the Unite the Right event, and in which the organizers of the event could be heard to be "spoiling for a fight." Despite Plaintiffs' lengthy and arduous discovery efforts, however, the Movants have not uncovered the materials that Respondent has described.

Before identifying the steps Movants have taken, however, it is important to note two things. *First*, as must now be apparent to the Court, Respondent's description of what he (or his source(s)) possesses and who his supposed source(s) is has shifted over time. For example, Respondent now contends that he cannot even recall whether the source(s) he aims to protect through the journalist's privilege is "Source A" or "Source B." *See* Dkt No. 25 at 1. Source A is apparently someone Respondent can identify but who has denied being the source. *Id.* And Respondent cannot identify Source B other than stating that he or she was one of many guests at some party that occurred somewhere at some time—per Respondent, he "would only be speculating recklessly about which, if any, of [the guests] it could have been." *Id. Second*, in response to specific questioning by Movants' counsel, Respondent has been wildly vague about any details about the content that his supposed source(s) showed him, *i.e.*, precisely where or when these planning sessions took place, as well as any of the circumstances surrounding where and when Respondent was supposedly shown this evidence. Taken together, these two facts—*i.e.*, that (i) Respondent's story about what he has and who has it has changed; and (ii) Respondent's story lacks any guiding detail—of course presents challenges in targeting this material with any precision.

Nevertheless, with that background, Movants turn to the principal investigative efforts they have taken aimed at acquiring material such as that described by Respondent.

*First*, Movants issued document requests to each Defendant pursuant to Fed. R. Civ. P. 34. By their plain terms, these requests sought the material Respondent has described. Specifically, the requests sought the production of, for example: (i) "[a]ll Documents and Communications concerning the events, including without limitation all documents and communications . . .

concerning any preparation, planning, transportation to, or coordination for, the Events"; (ii) "[a]ll Documents and Communications concerning events, meetings, rallies, conferences, or conversations held prior to the Events that relate to the Events in any way;" and (iii) "[a]ll Documents concerning and all Communications concerning or with any Plaintiff or Defendant (other than You) named in the Amended Complaint, and any other Person who attended, planned or was involved in the events." Bloch Decl. Ex. 1. To be clear, the requests defined Documents specifically to include "audio recordings." *Id.* Despite the issuance of these document requests, no Defendant produced recordings that match the description of the recordings that Respondent described to Movants. *See* Bloch Decl. ¶ 4.

*Second*, Movants issued document requests to dozens of non-parties by way of subpoenas pursuant to Fed. R. Civ. P. 45. These subpoenas also sought the material that should have encompassed evidence such as that described by Respondent. For just one example, Movants issued two subpoenas (at separate addresses) to Evan McLaren, one of the individuals that Respondent specifically identified as being present at one of the events depicted in an audio recording that Respondent claimed that he possessed *See* Dkt. No. 1-2 ¶ 14c. Through those subpoenas, Movants requested not just "[a]ll documents concerning the above-captioned litigation," but specifically "[a]ll documents and communications concerning any rally or event on August 11 or 12, 2017, in Charlottesville, Virginia, including but not limited to all documents and communications that anticipated, planned, publicized, reported on, or otherwise concern such rally or event, and including documents and communications concerning any meeting in which you participated with Richard Spencer of Identity Europa in planning such rally or event." Bloch Decl. Ex. 2. And, again, Movants defined the term "documents" to specifically include "sound recordings." *Id.* Despite the issuance of these subpoenas, not one subpoena recipient (including McLaren) produced recordings that match the description of the recordings that Respondent described to Movants. *See* Bloch Decl. ¶ 4.

*Third*, Movants issued interrogatories to each Defendant pursuant to Fed. R. Civ. P. 33. These interrogatories similarly required the Defendants to confirm whether there were any audio recordings of planning sessions for Unite the Right. *See* Bloch Decl. Ex. 3. Specifically, the interrogatories required the Defendants to "Identify and Describe in detail each Contact or Communication of any kind you had with each one of the other Defendants between January 2017 and August 13, 2017, including the nature or content of the Contact or Communication, where and when the Contact or Communication took place, and anyone else who participated in the Contact or Communication." *Id.* Again, the term "Communication" was defined in the interrogatories to expressly include "audio recordings." *Id.* Despite the issuance of these interrogatories, no Defendant identified in response that there were recordings that match the description of the recordings which Respondent has described to Movants. Bloch Decl. ¶ 4.

*Finally*, Movants deposed more than thirty individuals in this action. *See* Bloch Decl. ¶ 2. At several of these depositions, Movants questioned the witnesses about in-person planning meetings that took place with respect to Unite the Right. *See, e.g.*, Bloch Decl. Ex. 4 at 128-31, 186-93 (Richard Spencer); Ex. 5 at 52, 133, 191-96, 235-54, 285-289, 308, 401-06 (Matthew Heimbach). None of the deponents, however, discussed recordings of those meetings that match

the description of the recordings which Respondent has described. *See* Bloch Decl. ¶ 4. To take just one other example, Movants questioned Defendant Elliott Kline at length on the subject of Unite the Right planning meetings—and whether they were recorded—at both of his two depositions.[1] Mr. Kline was one of the central figures in the planning of Unite the Right and he attended nearly all planning sessions for it. *See supra* note 1. In fact, Mr. Kline drafted what was referred to as the central "planning document" for the event. Bloch Decl. Ex. 6 at 106, 120-23, 372-79. And indeed, Mr. Kline was the primary individual Respondent identified to Movants' counsel as being present at one of the Unite the Right-related events depicted in one of the audio recordings that was supposedly in Respondent's possession. *See* Dkt. No. 1-2 ¶ 14c.

Despite Mr. Kline's centrality to Unite the Right planning sessions, however, at neither of his depositions did he describe recordings of planning sessions that match the description of what Respondent has described. Further, Mr. Kline made plain that he took no notes at any of those meetings, and did not have any documents, including any e-mails or text messages, regarding those meetings. Bloch Decl. Ex. 6 at 196. Mr. Kline also made plain that he did not "make any kind of recording" of a meeting with Richard Spencer to plan Unite the Right. *Id.* at 198. Mr. Kline also testified that he never appeared in a video that someone else had recorded regarding planning of Unite the Right. *See id.* at 187. Finally, Mr. Kline confirmed that although there were weekly audio meetings on the on-line chat forum, Discord, that he did not record those meetings. *Id.* at 378.[2]

For the avoidance of doubt, despite the topic of in-person planning meetings arising at depositions of witnesses in this case, no witness testified to their awareness of the type of recordings that Respondent has described in this action. *See* Bloch Decl. ¶ 4.

\*   \*   \*

Throughout what could be described as a tumultuous litigation, Movants have remained steadfastly focused on seeking evidence of what occurred at the planning meetings for the Unite the Right event. Despite these best efforts, however, they have simply not been able to uncover the evidence that Respondent has described to them. Given that, they have also of course been unable to identify any supposed source(s) for this material.

In light of Movants' efforts, this case is dissimilar to the authorities cited by the Court which rejected challenges to the invocation of the journalist's privilege. *See* Dkt. No. 24 at 17–18. In *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 8-9 (2d Cir. 1982), the court noted that

---

[1] As testified to by Richard Spencer, one of the key leaders of Unite the Right, Mr. Kline was a key organizer of the rally who Mr. Spencer was in contact with nearly every day in the months preceding the rally, Bloch Decl. Ex. 4 at 123, and in particular in the week leading up to it, *id.* at 128. Indeed, Mr. Spencer testified that although he did not attend all Unite the Right planning meetings himself, Mr. Kline was principally involved on a day-to-day basis and that Mr. Spencer authorized Mr. Kline to make decisions for him regarding the event. Bloch Decl. Ex. 4 at 133. Indeed, Mr. Kline reported to Mr. Kessler that planning for Unite the Right became his "full-time job" beginning in early June 2017. Bloch Decl. Ex. 7 at 199-200, 274.

[2] Mr. Kline subsequently testified that one of these online Discord calls was recorded and leaked. Bloch Decl. Ex. 7 at 205-07, 292. That call that does not match the description Respondent provided to Movants as to the in-person meetings for which he possessed (or his source(s) possessed) recordings.

although there had been significant deposition testimony taken in the action, "there [was] no indication that anyone was asked [at deposition] the simple question [at issue]." As shown above, that is not the case here—the subject of Unite the Right planning meetings came up regularly at depositions. Similarly, in *In re Pishevar*, 439 F. Supp. 3d 290, 307 (S.D.N.Y. 2020), it was "far from clear what other non-press sources have [the sought-after] information." Here, for the reasons addressed above, Movants simply have no reason to believe that there is any other available non-press source (assuming, *arguendo*, that Respondent is a member of the "press") for the information that Respondent has described. Finally, in *Persky v. Yeshiva Univ.*, No. 01-cv-5278, 2002 WL 31769704, at *4 (S.D.N.Y. Dec. 10, 2002), the court rejected the privilege where "a mere three people were deposed and . . . three other individuals were 'informally questioned.'" As demonstrated, however, Movants here undertook significantly more efforts to secure the precise information that Respondent (or his source(s)) possesses. Specifically, Movants have engaged a multi-prong and sustained effort to acquire the identities of individuals who attended planning meetings and to acquire recordings of planning meetings in any form. In sum, the only ever indication that there exist recordings of in-person planning meetings for Unite the Right came from a single source: Respondent.

      For these reasons, and those stated in Movants' earlier submissions, Movants respectfully request that the Court reject Respondent's invocation of the journalist's privilege.

Respectfully submitted,

/s/ *Benjamin D. White*
Benjamin D. White

(Attachments)